CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
November 12, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
        DEPUTY CLERK

IN THE UNITED STATES DISCTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 5:21-cr-00007-3 |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| STEPHEN WAYNE PURKS | ) | Chief United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a *pro se* motion filed by defendant Stephen Wayne Purks, titled as a motion to "Strike, Alter, or Amend" language from portions of the record. (Dkt. No. 637.) For the reasons discussed herein, the motion will be denied.

I.  BACKGROUND

On February 6, 2023, following a six-day jury trial, Stephan Wayne Purks was found guilty of all 15 counts against him in the Superseding Indictment, including charges of conspiracy to distribute and/or possess with the intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and 841(a)(1), after two prior serious felony drug convictions, and numerous individual counts of distribution of varying amounts of either actual methamphetamine or a methamphetamine mixture. (Jury Verdict, Dkt. Nos. 410.) The jury also found that Purks had prior convictions qualifying him for an enhancement under 21 U.S.C. § 851. (Jury Verdict Phase II, Dkt. No. 412.) On July 26, 2023, this count sentenced Purks to a 300-month term of imprisonment, which was the statutory mandatory minimum for his offenses, to be followed by a ten-year term of supervised release.[1] (Judgment, Dkt. No. 555.)

In his motion to "Strike, Alter, or Amend," Purks expresses concern about similar references in both the court's June 22, 2022 memorandum opinion denying his motion to

---

[1] Purks was sentenced to different supervised-release terms on different counts—some were 6-year terms and some were 8-year terms—but all were to run concurrently.

suppress (Dkt. No. 363) and the transcript of the suppression hearing (Tr. 22–23, Dkt. No. 376). The transcript contains Special Agent (SA) Thomas Hickey's testimony that Purks expressed an interest in cooperating when he was advised that he had been indicted. (Tr. 22–23.) Then, in the "Background" section of its January 11, 2023 memorandum opinion, the court referenced that portion of SA Hickey's testimony, summarizing that,"[a]t the conclusion of the interview, Purks expressed interest in cooperating with the United States, and SA Hickey suggested that he let his counsel know, once he arrives in Virginia, that he wants to continue cooperation." (Mem. Op., Dkt. No. 363.) (Tr. 22–23.)

Purks contends that SA Hickey's testimony is inaccurate and "clearly untrue," (Mot. 2, Dkt. No. 637.) He requests that the language be "corrected" to reflect that he (Purks) did not express an interest in cooperation. The court construes the motion as one to strike or seal from the record any reference to an interest in cooperating with the United States.

As an initial matter, although Purks disputed then and continues to dispute SA Hickey's testimony, Purks does not assert that the transcription was wrong or that the court mischaracterized the testimony in its opinion. Instead, Purks disputes the credibility of the testimony, claiming it is untrue. He may not like what SA Hickey said, but that is what was said and it is part of the record. Thus, there is no basis to "strike" the testimony as inaccurate.

The court discusses the request to seal below, but notes that neither the court's opinion nor the transcript makes any finding as to whether that portion of the testimony was true. Stated differently, there has been no finding or conclusion from the court that Purks cooperated or attempted to cooperate. The court simply noted that SA Hickey testified to that effect, and the transcript accurately reflects that testimony; whether that portion of his testimony was true is not an issue that has been decided. Notably, moreover, Purks did not receive a motion for substantial

assistance or any reduction in his sentence for any alleged cooperation.

Notably, moreover, Purks testified about the meeting with SA Hickey at the same suppression hearing, and he stated that he had refused to answer specific questions about anyone involved and that he told SA Hickey, "I'm not going to incriminate myself or somebody else." (Tr. 41.) Purks also maintained, in objecting to the Presentence Investigation Report, that he "definitely didn't say anything involving anybody that is in this case with me or myself" to law enforcement agents, including SA Hickey. (PSR 39 (Def. Objs.), Dkt. No. 516.) And he reiterates that same position in his pending motion.

## II. DISCUSSION

### A. Legal Standards

Although a district court's authority and discretion to seal judicial records or documents is well established in the Fourth Circuit, the court may do so only "if the public's right of access is outweighed by competing interests." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (internal citations and quotations omitted). Because public access advances judicial integrity and serves the public interest, access "may be abrogated only in unusual circumstances." *Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014) (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988)). The party seeking the sealing of documents bears the burden of overcoming the right of access to the documents. *Va. Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004).

There are two sources for the public's right of access to court documents: the common law and the First Amendment. *United States v. Doe*, 962 F.3d 139, 145 (4th Cir. 2020) (citing *Va. Dep't of State Police*, 386 F.3d at 575). "The common law presumes a right to inspect and copy judicial records and documents." *Stone*, 855 F2d at 180 (citing *Nixon v. Warner Commc'ns,*

*Inc.*, 435 U.S. 589, 597 (1978)). "But because a presumption may be overcome, the public's right of access is qualified, not absolute." *Doe*, 962 F.3d at 145. Under the common law, "to overcome that presumption, a court must find that there is a significant countervailing interest in support of sealing that outweighs the public's interest in openness." *Id.* (cleaned up). Courts have also noted that the public interest "is at its apex when the government is a party to the litigation." *Pub. Citizen*, 749 F.3d at 271.

"The public's right to access documents under the First Amendment is narrower in scope but stronger in force. It applies only to particular judicial records and documents." *Doe*, 962 F.3d at 145 (citation and internal quotations omitted). Where the First Amendment does apply, "'a compelling [ ] interest' must justify denial of access, and closure must be 'narrowly tailored to serve that interest.'" *Id.* (quoting *Pub. Citizen*, 749 F.3d at 266). When considering a motion to seal, a court "must first 'determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake.'" *Id.* at 145–46 (quoting *Va. Dep't of State Police*, 386 F.3d at 576).

The Fourth Circuit has recognized a First Amendment right of access to plea hearings, sentencing hearings, and the documents filed in connection with those proceedings. *In re Wash. Post Co.*, 807 F.2d at 390. At least four circuit courts (as of 1986) also had held that the First Amendment applies to suppression hearings, which is at issue here. *See id.* (collecting authority and noting no contrary authority); *see also Doe*, 962 F.3d at 146 (assuming without deciding that the First Amendment applied but declining to "conclusively decide this issue" because defendant's interest did not outweigh the public's interest under either the common law or the more rigorous First Amendment standard).

4

B.  **Application to Purks's Motion**

Based on the foregoing authority, the court concludes that the First Amendment right of access applies here to both the transcript of the suppression hearing and to the court's opinion.[2] Applying the First Amendment standard, then, the court may seal the documents only if (1) closure serves a compelling interest; (2) in the absence of closure, there is a substantial probability that compelling interest would be harmed; and (3) no alternatives to closure would adequately protect the interest.  *Doe*, 962 F.3d at 146.

Purks has not shown that sealing here would serve a compelling interest or that in the absence of closure, a compelling interest would be harmed.  The court assumes that his safety would be a compelling interest.  *See Elijah v. United States*, No. 4:15-CR-70-D, 2020 WL 5028767, at *9 (E.D.N.C. Aug. 25, 2020) (doing same), *aff'd in part, appeal dismissed in part sub nom. United States v. Seal*, 856 F. App'x 476 (4th Cir. 2021).   Still, Purks does not demonstrate how sealing of the identified portions of the record would serve that compelling interest.  As noted in the background section above, Purks's request to seal is premised solely on his disagreement with the substance of SA Hickey's testimony.  But the testimony he challenges does not even suggest that he did, in fact, cooperate, only that SA Hickey's recollection of their conversation included that Purks expressed an interest in potentially cooperating.  And the court has made clear herein that he was not granted any benefit as the result of any possible cooperation.  So, unlike cases in which a defendant has cooperated, allowing to remain on the record SA Hickey's testimony—testimony that Purks has always contested—does not obviously endanger Purks.

---

[2] Even if the court were to conclude the documents were protected only by the common law right-of-access, the result would be the same.  As discussed herein, Purks has not established a countervailing interest, compelling or otherwise, that requires sealing of these particular documents or portions of them.

Purks's failure to show potential harm distinguishes this case from *Doe*. There, the court upheld sealing because the defendant made a particularized showing that public access to his cooperation-related information created a concrete risk to his safety. The defendant submitted credible, detailed evidence demonstrating that disclosure of cooperation information placed him at serious risk. By contrast, Purks's motion relies on conclusory assertions of inaccuracy without any substantiation of a safety concern. He offers no affidavits, evidence, or specific facts suggesting that public access to the challenged language has exposed him to, or will likely expose him to, threats, harassment, or physical harm.

Moreover, *Doe* instructs that the decision to seal must be made after balancing the public's right of access against the movant's interest in confidentiality. Purks's conclusory claim does not overcome the strong presumption in favor of openness, particularly given that the testimony at issue was presented in open court and not suppressed at that time. The information is already part of the public record, and the public has a legitimate interest in maintaining the integrity and completeness of those records. Accordingly, under *Doe*, Purks fails to demonstrate a compelling interest sufficient to justify sealing.

### III. CONCLUSION AND ORDER

For the reasons set forth above, it is hereby ORDERED that Purks's motion (Dkt. No. 637) is DENIED.

Entered: November 12, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge